**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

Civil Action Number:

JUAN CARLOS GIL,

    Plaintiff,
vs.

ARUBAANSE LUCHTVAART MAATSCHAPPIJ N.V., INC
d/b/a www.arubaairlines.com,

    Defendant.

---

## COMPLAINT

COMES NOW Plaintiff Juan Carlos Gil ("Plaintiff"), by and through his undersigned counsel, and hereby files this Complaint and sues Defendant Arubaanse Luchtvaart Maatschappij N.V., Inc ("Defendant") for injunctive relief, attorney's fees and costs (including, but not limited to, court costs and expert fees) pursuant to Title III of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12181-12189 ("ADA"), 28 C.F.R. Part 36 and alleges as follows:

### INTRODUCTORY STATEMENT

1. Plaintiff brings this action in Federal Court to stop the marginalization of blind, vision impaired, and low vision patrons of Defendant Arubaanse Luchtvaart Maatschappij N.V., Inc's business.

2. Businesses can make choices and can either make their business inclusive, or they can make them effective **Zones of Discrimination** and exclude the visually-impaired.

1

3. When business owners do not take steps necessary to notice people of their businesses limitations to provide auxiliary aids and services, they are not only marginalizing the visually impaired community, but they are actively excluding them from their business, which in fact segregates the disabled into being non-participants, i.e.: second-class citizens.

4. This case arises out of the fact that Defendant Arubaanse Luchtvaart Maatschappij N.V., Inc has operated its business in a manner and way that completely excludes individuals who are visually impaired from access to Defendant's business based upon Defendant's failure to provide auxiliary aids and services for effective communications.

5. This complaint seeks declaratory and injunctive relief to correct Defendant's policies and practices to include measures necessary to ensure compliance with federal law, to provide auxiliary aids and services for effective communication in Defendant's business (which includes Defendant's Website) so that Plaintiff (who is visually impaired) can access and communicate with Defendant effectively and timely such that Plaintiff's access to Defendant's airplanes is not impeded; as such impediment has rendered Defendant's business not fully accessible to the visually impaired.

## JURISDICTION & VENUE

6. This is an action for declaratory and injunctive relief pursuant to Title III of the Americans With Disabilities Act, 42 U.S.C. §§12181-12189 ("ADA"), 28 U.S.C. § 1331, 28 C.F.R. § 36.201 and to prevent discrimination which includes equal access and effective communications with Defendant's business.

7. Venue in this Court is proper pursuant to 28 U.S.C. §1391(b) because the Defendant is conducting business within the jurisdiction of this court by virtue of the fact Defendant's www.arubaairlines.com website is available to the general public within this district, therefore, the acts constituting the violation of the ADA occurred in this District. Further, Defendant's airplane transportation service is available the public within this district. In addition, the Defendant is authorized to conduct business within the state of Florida as a foreign for profit corporation.

8. Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

**Juan Carlos Gil**

9. Plaintiff Juan Carlos Gil is a resident of the state of Florida.

10. Plaintiff is legally blind and a member of a protected class under the ADA, 42 U.S.C. §12102(1)-(2), the regulations implementing the ADA set forth at 28 CFR §§36.101 *et seq.* and in 42 U.S.C. 3602, §802(h). Plaintiff suffers optic nerve damage and is legally blind. Plaintiff also suffers from cerebral palsy, is unable to walk, and is confined to a wheelchair. Plaintiff is substantially limited in the major life activity of seeing. Plaintiff's disability is defined in 28 C.F.R. §36.105(b)(2) and §36.105(2)(iii)(B).

11. Plaintiff is an athlete who travels for his athletic triathlon endeavors, and also is an advocate for the rights of blind and wheelchair bound disabled individuals.[1]

---

[1] Juan Carlos Gil has traveled to speak on disabled rights, written letters, and mentored other disabled individuals as well as being the Plaintiff in the Landmark Historic federal trial over Web Accessibility (*Juan Carlos Gil v Winn Dixie Stores, Inc.* No. 16-cv-23020); See press release on case: www.prweb.com/releases/2017scottrdinin/06civilrights/prweb14437034.htm

12. In the past years, Plaintiff has traveled to Arizona, Orlando, and Boston to attend various conventions and meetings to advance the rights of the disabled. Such events include, but are not limited to, the National Federation for the Blind convention in Orlando[2], the American Counsel for the Blind conferences[3] and various focus groups and meetings.

13. Plaintiff is a native of Columbia and also travels extensively to Venezuela and Columbia to visit family and oversee investments.

14. Plaintiff can only use/comprehend internet content that interfaces with his screen reader software. Plaintiff also requires that electronic document information in an accessible format such as HTML or an accessible PDF format.

**Arubaanse Luchtvaart Maatschappij N.V., Inc**

15. Defendant Arubaanse Luchtvaart Maatschappij N.V., Inc is the owner and operator of an air transportation business under the brand name "Aruba Airlines."

16. Since Defendant provides air travel, Defendant is also referenced as "Carrier."

17. Defendant's operations are based in Aruba and its transportation services expanding across the world including but not limited to Miami Florida.

18. Defendant Arubaanse Luchtvaart Maatschappij N.V., Inc is a subsidiary of Seastar Holding N.V. which is a local Aruban limited liability company.

## FACTS

19. Defendant offers for sale to the public air transportation which services are referenced throughout as "goods and services," and/or "transportation."

---

[2] July 2017, 2018
[3] In 2017 (Nevada) and in 2018 (Wisconsin)

4

20. At all times material hereto, Defendant is an organization which (under the brand name "Aruba Airlines") owns and operates airplanes. Space (seats) on each one of Defendant's airplanes is available for hire by the public. As the owner and operator of transportation for hire, Defendant engaged in commerce (travel, trade, traffic, commerce, transportation) as defined at 42 U.S.C. §12181(1),and is therefore subject to the ADA.

21. When used by the public for travel/transportation, Aruba Airlines also provides dining service.  Therefore, besides being a mode of transportation, Defendant's airplanes are each a place of public accommodation as defined as "[A] restaurant, bar, or other establishment serving food or drink," pursuant to 42 U.S.C. §12181(7)(B) and 28 C.F.R. Part 36.  Defendant's airplanes etc. are also referenced throughout as "Place(s) of Public Accommodation," and/or "aircraft(s)".

22. Seats on Defendant's aircraft are available to be reserved by the public through various airports across the United States. One such airport where Defendant's aircraft may be accessed through is Miami International Airport, which is Plaintiff's preferred airport since it is close to his home.

23. The Defendant controls, maintains, and/or operates a collection of related web pages, including multimedia content, typically identified with a common domain name, and published on at least one web server; namely the domain located at a website called www.arubaairlines.com ("Website").

24. Defendant's Website is an electronic storefront and business permits the public to obtain information on Aruba Airlines' schedule of flights, as well as the cost for travel during various dates and times, the make and model of the aircraft for the scheduled flights, travel policies, policy on luggage, policy on service animal travel, and

to purchase tickets for travel, as well as other information Defendant is interested in communicating to the public. Most importantly, the public can purchase passage on flight travel through Defendant's Website.

25. For all of these reasons, Defendant's Website is an integral part of the goods and services offered by Defendant. By this nexus, the Website is characterized as a Place of Public Accommodation pursuant to Title III, 42 U.S.C. §12181(1) and 42 U.S.C. §12181(7)(E) of the ADA[4].

26. Within Defendant's Website the public can access provided electronic documents on demand. Defendant offers the public access to its electronic documents online though Portable Document Format, which is commonly referred to as "electronic documents" or "PDFs."

27. The electronic documents offered in Defendant's Website were not coded for accessible to screen reader software or provided in an HTLM format.

28. Plaintiff has purchased travel on Aruba Airlines in the past (specifically for his travel to Venezuela) and continues to be an Aruba Airlines customer.

29. Since travel by aircraft is customarily scheduled, reserved and pre-paid online, Plaintiff has been compelled to visit Defendant's Website to reserve and pre-pay for travel with Aruba Airlines.

30. When Plaintiff has gone onto Defendant's Website to learn about the Carrier's times, dates, and prices of scheduled flights and to reserve and pre-pay for

---

[4] "The Department of Justice has long taken the position that both State and local government Websites and the websites of private entities that are public accommodations are covered by the ADA. In other words, the websites of entities covered by both Title II and Title III of the statute are required by law to ensure that their sites are fully accessible to individuals with disabilities." ( See: Statement of Eve Hill Senior Counselor to the Assistant Attorney General for the Civil Rights Department of Justice - Before the Senate Committee on Health, Education, Labor & Pensions United States Senate – Concerning The Promise of Accessible Technology: Challenges and Opportunities – Presented on February 7, 2012.

6

travel, he has been unable reserve and to purchase a ticket for himself because the www.arubaairlines.com is inaccessible with his screen reader software.

31. In March 2019, Plaintiff went onto Defendant's Website to book air travel to Aruba, but the Website is still inaccessible so Plaintiff could not:

    a. Find out travel (dates and times) schedule;
    b. Find out the prices for scheduled travel (trips);
    c. Learn about the Carrier's current luggage policy;
    d. Learn about the Carrier's current policies for travel with service animals; and
    e. Learn about current travel restrictions.

32. In this Smartphone era (the age of information technology), Defendant's provision of a Website is an essential part of the services offered, and is no different than the customer service which Defendant provides to the public as part of its product and service offering.

33. Defendant's Website is not designed with consideration for Universal design. Universal design is necessary so visually impaired individuals who use screen reader software can access the Website[5]. Furthermore, Defendant's Website does not have the indication of website accessibility[6].

34. The failure to obtain the information needed precluded Plaintiff's ability to patronize Aruba Airlines without requiring the assistance of a sighted individual. Thus Plaintiff was unable to have equal access as a sighted individual.

---

[5] "Universal design is the design of products and environments to be usable by all people, to the greatest extent possible, without the need for adaption or specialized design."  Kalbag, Laura (2017), by *Accessibility for Everyone*, (p. 5)

[6] 

35. Plaintiff's inability to communicate with Defendant's carrier business has created a *virtual barrier* which resulted in an *effective barrier* to access to Defendant's travel services has hindered, impeded and inhibited Plaintiff's access to Defendant's physical travel modalities.

36. Plaintiff's expectation of participating in online purchase of travel passage has been vanquished since he cannot access Defendant's Website to avail themselves of the latest services which Defendant offers to the public.

37. While Defendant addresses individuals with disabilities on its Website[7], and provides information on how its aircraft accommodate individuals with disabilities, the fact is that its Website is inaccessible to blind individuals. Therefore, despite Defendant's notice of accessibility within its Website, Defendant's Website is not accessible to the visually impaired.

38. The fact that Plaintiff could not access the Defendant's Website and could not comprehend the electronic documents contained therein left him excluded from accessing the travel modalities which Defendant makes available for the public further left him with the feeling of segregation, rejection, isolation, and unable to participate in his own business affairs (such as in this case making travel plans and purchasing passage for travel) in a manner equal to that afforded to others who are not similarly disabled.

39. Plaintiff's inability to fully use Defendant's Website and the electronic documents therein has hindered, impeded and inhibited their access to Defendant's goods and services (which include travel modalities).

---

[7] https://www.arubaairlines.com/p/customerservice

40. Plaintiff has suffered as a result and has suffered particularized harm and an injury in fact.

41. Plaintiff cannot make proper arrangements for transportation without the ability to know in advance the available times and dates of travel (schedules) and prices for travel and purchase the fair for travel (as is customary), which service is available online to the public through Defendant's Website.

42. Plaintiff has a concrete plan to travel to Aruba in the near future (*see Houston v. Morad Supermarkets, Inc*. 733 F.3d 1323 (11th Cir. 2013).

43. By denying Plaintiff the opportunity to comprehend its Website and electronic documents therein due to a disability, Defendant has denied Plaintiff the opportunity to participate and benefit from Defendant's travel services as afforded to the public.

44. Plaintiff will suffer continuous and ongoing harm from Defendant's omissions, policies, and practices set forth herein unless enjoined by this Court.

45. On information and belief, Defendant has not initiated an ADA policy for effective communication to insure full and equal use of their business by individuals with disabilities.

46. On information and belief, Defendant has not provided transparency to the public by disclosing its intent to correct the inaccessibility of its Website and the electronic documents therein.

47. On information and belief, Defendant has not offered any form of electronic documents in an accessible format for blind or visually impaired individuals.

48. Thus, Defendant has not provided full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations which it provides to the public.

49. All Public Accommodations must insure that their *Places of Public Accommodation* provide **Effective Communication** for all members of the general public, including individuals with disabilities.

50. On information and belief, Defendant is aware of the common access barriers and barriers to effective communication within its Website and the electronic documents therein which prevent individuals with disabilities who are visually impaired from the means to comprehend the information presented therein.

51. Defendant and alike air carriers are fully aware of need to provide full access to all visitors to its Website.[8]

52. At the present time and since the Website's inception, Defendant has provided inadequate service, and ineffective communications and services. Plaintiff's injuries are real, have occurred and are continuing. Plaintiff's injury will continue to occur until it is absolutely clear that Defendant's wrongful behavior is remedied.

53. Such barriers result in discriminatory and unequal treatment of individuals with disabilities who are visually impaired and result in punishment and isolation of blind and low vision individuals from the rest of society.

54. Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged hereinabove and this suit for declaratory judgment and injunctive relief is

---

[8] Major Retailing Trade Magazines have been publishing articles to alert retailer of the need to update their websites in light of current legal trends and cases e.g. (https://www.digitalcommerce360.com/2016/04/01/web-accessibility-what-e-retailers-need-know/), (www.retailingtoday.com/article/lawsuit-highlights-importance-ada-compliance )

10

his only means to secure adequate redress from Defendant's unlawful and discriminatory practices. No price can be put on Plaintiff's inability to investigate, compare and obtain travel options.

55. Notice to Defendant is not required as a result of Defendant's failure to cure the violations. Enforcement of the rights of Plaintiff is right and just pursuant to 28 U.S.C. §§ 2201, 2202.

56. Plaintiff has retained the civil rights law office of Scott R Dinin, P.A. and has agreed to pay a reasonable fee for services in the prosecution of this cause, including costs and expenses incurred. Plaintiff is entitled to have reasonable attorneys' fees, costs and expenses paid by Defendant Arubaanse Luchtvaart Maatschappij N.V., Inc.

**COUNT I – VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT**

57. It is irrefutable that the ADA and implementation of ADAAG requires that Public Accommodations (and Places of Public Accommodation) are required to ensure that communication is effective.

58. Historically, Congress' statutory intent has been to construe Civil Rights legislation broadly. The interpretation of causation is based on proximate (not remote) cause. In *Bank of America v City of Miami* 137 S. Ct. 1296 (2017)[9], the Supreme Court affirmed that proximate cause is controlled by the nature of the statutory cause of action (quoting from *Lexmark Intl' Inc. v. Static Control Components, Inc.* 572 U.S. (2014)). The interconnection of the right to participate in economic and social life is fluid and multi-dimensional such that a violation of civil rights causes ripples of harm to flow.

---

[9] In *Bank of America*, the Supreme Court held that Congress has not legislated (drawn) precise boundaries on the application of proximate cause for civil rights violations and instructed the lower court to define the contours of proximate cause based on the facts and circumstances of the underlying action.

*Bank of* America (quoting from *Ass. Gen. Contractors of Cal. Inc. v. Carpenter,* 459 U.S. 519, 534 (1983)). In Civil Rights violations, proximate cause requires a direct relation between the injury asserted and the injurious conduct. Thus, as a disabled individual, the instant Plaintiff has established standing.

59. According to 28 C.F.R. §36.303(b)(1), auxiliary aids and services includes "voice, text, and video-based telecommunications products and systems." 28 C.F.R. §36.303(b)(2) specifically states that screen reader software is an effective method of making visually delivered material available to individuals who are blind or have low vision.

60. Section 28 C.F.R. §36.303(c) specifically states that public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities. "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability," 28 C.F.R. §36.303(c)(1)(ii).

61. Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis of disability by public accommodations and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

62. Defendant's Website (together with the PDF documents contained therein) has not been designed to interface with the widely and readily available technologies that can be used to ensure effective communication.

**Applicability of 42 U.S.C. §12181 to the Defendant**

63. Further, by virtue of the fact that Defendant's travel services are available to the public and each travel modality (aircraft) provides dining service, each is a place of public accommodation subject to the requirements of Title III of the ADA; 42 U.S.C. §12181(7)(B).

64. As Defendant is The ADA prohibits any and all barriers which would limit access by the visually impaired to such places of public accommodation.

65. The virtual barrier to access is just as real as a physical barrier to access, for without information as to the goods and services offered and ability to investigate and choose a travel modality (aircraft) and a travel carrier (such as Defendant), the visually impaired have no access to travel services (as provided by Defendant).

66. The [www.arubaairlines.com](www.arubaairlines.com) website is subject to 42 U.S.C. §12181(1) due to its nexus to the business of Defendant in providing the portal/gateway for the public to the carrier's aircraft schedule and prices for travel and offers the public the ability to be educated as to the fleet of aircraft, and locations/distances of travel, which in turn allows the public to determine if they wish to physically patronize Defendant's aircraft service.

67. The [www.arubaairlines.com](www.arubaairlines.com) website is also a *Place of Public Accommodation* pursuant to 42 U.S.C. §12181(7)(E) as it serves as an integral part of Defendant's aircraft service as Defendant provides the ability to purchase air travel passage online and as part of the onboard travel experience.

68. Plaintiff's position is further supported by recent case law which states that organizations which have not fully updated their websites and electronic documents to insure accessibility for the visually impaired are not immune to redress.

69. No notice is required because under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

70. Unlawful discrimination includes "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations." 42 U.S.C. §12182(b)(2)(A)(II).

71. Unlawful discrimination also includes "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden." 42 U.S.C. §12182(b)(2)(A)(III).

72. The use of the internet is at the center of daily life because it is 2018, not 1996.

**Barriers to Access**

73. As a result of the inaccessibility of Defendant's physical business precipitated by barriers within its Website and failure of the electronic documents

contained therein, visually impaired individuals are denied full and equal access to Defendant's travel modalities as Defendant has made available to the public through the information provided on Defendant's Website, in derogation of 42 U.S.C. §12101 <u>et. seq.</u>, and as prohibited by 42 U.S.C. §12182<u> et. seq.</u>

74. The Website does not offer include the universal symbol for the disabled[10] and the indication of website accessibility[11] which would permit disabled individuals to access the Website's accessibility information and accessibility protocols.

75. There are readily available, well established guidelines on the Internet for making websites accessible to the blind and visually impaired. Incorporating the basic components to make its Website and electronic documents contained therein accessible would neither fundamentally alter the nature of Defendant's business nor would it result in an undue burden to the Defendant.

**PDF Documents**

76. Defendant's website contains one or more links to a PDF (electronic document) attachment. An example of one such link is the Pet Import Requirements at https://www.arubaairlines.com/en/wp-content/uploads/2015/11/pet_import_requirements-AUA.pdf. The PDF attachment's flat surface does not contain accessible coding. Defendant's electronic documents have not been provided in HTML or with a text equivalent.

77. The failure of Defendant's electronic documents to be accessible impedes

---

[10] , or HTML "Accessibility" link for those individuals who are visually impaired

[11]

Plaintiff from fully accessing the financial services, goods and accommodations provided by Defendant and in so doing, Defendant has further discriminated against Plaintiff.

**Violations of the ADA**

78.  As a result of the inadequate development and administration of Defendant's Website and electronic documents therein, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303 to remedy the discrimination.

79.  Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff injunctive relief; including an order to:

a) Require Defendant adopt and implement a web accessibility policy to make publically available and directly link from the homepage of the www.arubaairlines.com website to a statement as to the Defendant's policy to ensure persons with disabilities have full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations through its Website.

b) Require Defendant take the necessary steps to make the Website readily accessible to and usable by visually impaired users, and during that time period prior to the www.arubaairlines.com website's being readily accessible, to provide an alternative method for individuals with visual impairments to access the information available on the Website until such time that the requisite modifications are made, and

c) Require Defendant to provide the appropriate auxiliary aids such that individuals with visual impairments will be able to effectively communicate with the Website for purposes of finding the schedule (time and date) of flights, as well as the cost

for travel during various dates and times, policy on luggage, policy on service animal travel, ability to purchase tickets for travel, and of viewing electronic documents provided to the public within Defendant's Website. During that time period prior to the Website's being designed to permit individuals with visual impairments to effectively communicate, requiring Defendant to provide an alternative method for individuals with visual impairments to effectively communicate so they are not impeded from obtaining the goods and services made available to the public through Defendant's Website.

80. For all of the foregoing, Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. Plaintiff is entitled to have reasonable attorneys' fees, costs and expenses paid by Defendant Arubaanse Luchtvaart Maatschappij N.V., Inc.

## **DEMAND FOR RELIEF**

**WHEREFORE,** Plaintiff Juan Carlos Gil hereby demands judgment against Defendant Arubaanse Luchtvaart Maatschappij N.V., Inc and requests the following injunctive and declaratory relief permanently enjoin Defendant from any practice, policy and/or procedure which will deny Plaintiff equal access to, and benefit from Defendant's services, programs, activities and facilities, as well as:

a) The Court issue a declaratory judgment that Defendant has violated Plaintiff's rights as guaranteed by the ADA;

b) The Court enter an Order requiring Defendant to update its www.arubaairlines.com website to remove barriers in order that individuals with visual disabilities can access the Website and effectively

communicate with the Website to the full extent required by Title III of the ADA;

c) The Court enter an Order requiring Defendant to update all electronic documents made available to the public to remove barriers in order that individuals with visual disabilities can access the electronic documents to the full extent required by Title III of the ADA;

d) pursuant to 42 U.S.C. §12188(a)(2), enter an Order for permanent injunction which directs Defendant to take all steps necessary to bring the electronic documents which it provides on its electronic media into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that all electronic documents are fully accessible to, and independently usable by, blind and low sighted individuals, and which further directs that the Court shall retain jurisdiction for a period to be determined to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain fully in compliance with the law;

e) The Court enter an Order requiring Defendant to clearly display the universal disabled logo[12] and indication of website accessibility[13] within its Website. Such a clear display is to insure that individuals who are

---

[12] 

[13] ![W3C WAI-AA WCAG 2.0]

disabled are aware of the availability of the accessible features of the www.arubaairlines.com website;

f) The Court enter an Order compelling Defendant to contract with an independent ADA expert/consultant for the purposes of that ADA expert/consultant review Defendant's policies, practices and procedures for five years commencing from the date of the Court's Order to insure that Defendant is in compliance with the ADA;

g) The Court enter an order requiring Defendant to retain an accessibility coordinator and a third party consultant to review and guide Defendant through its accessibility creation and procedures to insure compliance thereto;

h) The Court enter an order requiring Defendant to provide ongoing support for web accessibility by implementing a website accessibility coordinator, a website application accessibility policy, and providing for website accessibility feedback to insure compliance thereto;

i) The Court enter an Order requiring Defendant retain a qualified consultant acceptable to Plaintiff ("Mutually Agreed Upon Consultant") who shall assist it in improving the accessibility of its electronic documents so they are accessible to individuals with visual disabilities;

j) The Court require Defendant engage a (mutually agreed upon) Consultant to perform an automated accessibility audit on a periodic basis to evaluate whether Defendant's electronic documents continue to be accessible to individuals with visual disabilities;

k) The Court enter an Order directing Defendant to evaluate its policies, practices and procedures toward persons with disabilities, for such reasonable time so as to allow Defendant to undertake and complete corrective procedures to the Website;

l) The Court award damages in an amount to be determined at trial;

m) The Court to award Plaintiff reasonable litigation expenses and attorneys' fees; and

n) That the Court award such other and further relief as it deems necessary, just and proper.

Dated this 25th day of June, 2019.

                        Respectfully submitted,

                        *s/Scott Dinin*
                        Scott R. Dinin, Esq.
                        Scott R. Dinin, P.A.
                        4200 NW 7th Avenue
                        Miami, Florida 33127
                        Tel: (786) 431-1333
                        inbox@dininlaw.com
                        *Counsel for Plaintiff*